# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | | |
|---|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All funds on deposit in Bank of America account number<br>004630936126, held in the name of Glenford Family Trust | ) ) ) ) ) ) | Case No. 14-10304-DPW |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Western___ District of ___North Carolina___ is subject to forfeiture to the United States of America under ___see below___ U.S.C. §§ _____ *(describe the property)*:

all funds on deposit in Bank of America account number 004630936126, held in the name of Glenford Family Trust.

The application is based on these facts:

See Affidavit ~~attached as Exhibit A.~~ */s/ Eric R. Mackin*
The above-described property is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and 853(a), 31 U.S.C. § 5317(c)(2), and 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

☑ Continued on the attached sheet.

_____
*Applicant's signature*

DHS-HSI Special Agent Eric R. Mackin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: NOV - 5 2014

_____
*Judge's signature*

City and state: Boston, Massachusetts

U.S. Magistrate Judge Robert B. Collings
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Eric R. Mackin, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Department of Homeland Security's Homeland Security Investigations ("HSI") and have been so employed since May of 2008. My responsibilities as a Special Agent consist of investigating violations of U.S. Immigration and Customs laws, including federal drug trafficking and money laundering violations, and related offenses. I am also responsible for the seizure of assets derived from or used in the commission of said violations.

2. I am currently assigned to the High Intensity Drug Trafficking Area ("HIDTA") Financial Task Force in Boston, Massachusetts and have been so assigned since May 2013. Prior to my HIDTA assignment, I was assigned to the Boston region Organized Crime Drug Enforcement Task Force ("OCDETF"), which is a strike force incorporating various federal, state, and local law enforcement agencies. Prior to my position with OCDETF, I served as a United States Probation Officer in Brooklyn, New York, where I supervised and investigated federal offenders, and as a banking compliance analyst at Sovereign Bancorp, where I specialized in anti-money laundering analysis and regulatory compliance. I have completed the Federal Criminal Investigator Training Program as well as the HSI/ICE Special Agent Training Program at the Federal Law Enforcement Training Center located in Glynco, Georgia. Additionally, I have completed HSI's Financial Investigations and Asset Forfeiture Investigations training. I also have participated in and led numerous investigations involving drug trafficking and money laundering violations.

3. In addition to my law enforcement financial investigations training and

1

experience, I have extensive experience analyzing financial data and identifying criminal activity as a result of my position as an anti-money laundering analyst at Sovereign Bancorp. I have also passed the Certified Anti-Money Laundering Specialist examination given through the Association of Certified Anti-Money Laundering Specialists.

4. I make this affidavit in support of a warrant application to seize all funds on deposit in Bank of America account number 004630936126, held in the name of Glenford Family Trust (the "Glenford Account").

5. As set forth in greater detail below, I have probable cause to believe that the funds on deposit in the Glenford Account (the "Funds") constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and/or 846 and therefore are subject to seizure and forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 21 U.S.C. § 853(a). I further have probable cause to believe that the Funds are involved in transactions in violation of 31 U.S.C. § 5324(a)(3), or property traceable to such violations, and therefore are subject to seizure and forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2). Additionally, I have probable cause to believe that the Funds are involved in[1] money laundering in violation of 18 U.S.C.

---

[1] Funds that are not proceeds of a specified unlawful activity, and that are then commingled with tainted funds in an account to conceal the nature or source of the tainted funds, are deemed property "involved in" money laundering in violation of 18 U.S.C. § 1956. The United States, therefore, is entitled to seize and forfeit the property involved in the money laundering violations in their entirety. *See United States v. McGauley*, 279 F.3d 62, 76 (1st Cir. 2002) (affirming district court's finding that commingling of tainted funds with legitimate funds

2

§§ 1956 and/or 1957, or are property traceable thereto, and therefore are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

6.  The information contained in this affidavit is based on statements and information from witnesses, my personal knowledge and observations during the course of this investigation, my personal training and experience as a criminal investigator, intelligence obtained from other agents, and my review of records, documents, and other physical evidence obtained during this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth herein only those facts that I believe are necessary to establish probable cause to support the warrant requested herein.

7.  I am currently assigned to an investigation regarding Michael GORDON, Andrean JAGGON, Dagoberto OLEA (who is based in California), Daphne JEAN, Veneta ROWE, Steve GORDON, Monique GORDON, and others. GORDON, JAGGON, OLEA, JEAN, ROWE, Steve GORDON, Monique GORDON, and others are under investigation for drug trafficking in violation of 21 U.S.C. §§841(a)(1) and 846 and money laundering in violation of 18 U.S.C. §§1956 and 1957. As detailed in the Affidavit of Richard F. Atwood (the "Atwood Affidavit"), submitted in support of applications filed this day for warrants to search various locations in Massachusetts and Florida, GORDON, JAGGON, and OLEA have engaged in a conspiracy to transport large amounts of marijuana from Northern California to the Boston area and to launder

---

was sufficient to expose legitimate funds to forfeiture, if commingling was done to conceal the nature or source of the tainted funds).

3

the proceeds generated from the sale of that marijuana in Massachusetts and elsewhere. The Atwood Affidavit is incorporated herein by reference.

## BACKGROUND

### Drug Trafficking Offenses

8. Under 21 U.S.C. §841(a), it is unlawful to knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Marijuana is a Schedule I controlled substance. Furthermore, under 21 U.S.C. §846, it is illegal to knowingly and intentionally combine, conspire, confederate, and agree, with other persons to possess with intent to distribute, and to distribute, marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). The felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance also constitutes "racketeering activity" under 18 U.S.C. §1961(1), which is itself a "specified unlawful activity" (or "SUA") under 18 U.S.C. §1956(c)(7). And pursuant to 21 U.S.C. §881(a)(6) and 21 U.S.C. §853(a), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of violations of 21 U.S.C. §§841 and 846, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses is subject to seizure by and forfeiture to the United States.

### Structuring Offenses

9. Pursuant to 31 U.S.C. §5313, and regulations promulgated thereunder, including 31 C.F.R. §103.22, domestic financial institutions are required to prepare and submit Currency Transaction Reports ("CTRs") for every transaction involving over $10,000 in currency. To

4

complete a CTR, the financial institution is required to verify and record the name and address of the person presenting a transaction, and the identity, account number, and the social security number or taxpayer identification number, if any, of any person for whom a transaction is to be effected. The CTR obligation applies to the deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institutions, which involves a transaction in currency, bank checks, cashier's checks, money orders, or traveler's checks of more than $10,000.

10. 31 U.S.C. §5324(a) provides as follows:

No person shall, for the purpose of evading the reporting requirements of section 5313 (a) or 5325 ... (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313 (a) or 5325 ...; (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313 (a) or 5325 ... that contains a material omission or misstatement of fact; or (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

11. Pursuant to 31 U.S.C. §5317(c), any property involved in a violation of 31 U.S.C. §5324, and all property traceable to any such violation, is subject to seizure and forfeiture to the United States.

**Money Laundering Offenses**

12. Pursuant to 18 U.S.C. §1956(a)(1)(B)(i), it is illegal to conduct or attempt to conduct a financial transaction involving the proceeds of an SUA (here, trafficking marijuana, a controlled substance), knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of an SUA. And under 18 U.S.C. §1957(a), it is illegal to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from an SUA. Moreover, any property, real or personal, involved in a

5

transaction or attempted transaction in violation of 18 U.S.C. §§1956(a)(1)(B)(i) and/or 1957(a), or any property traceable to such property, is subject to seizure by and forfeiture to the United States pursuant to 18 U.S.C. §§981(a)(1)(A) and 982(a)(1).

13. To the extent that any of the offenses described herein were completed within one year before the seizure sought by this application, it shall not be a defense to forfeiture that the Funds currently on deposit in the Glenford Account are not the same funds that were involved in those completed offenses. Pursuant to 18 U.S.C. § 984, the Funds currently on deposit in the Glenford Account are forfeitable to the United States as fungible property in lieu of the funds that were so involved.

## INVESTIGATION

14. As set forth more fully in the Atwood Affidavit, investigators believe that GORDON is responsible for obtaining large amounts of marijuana from OLEA in California and sending it to the Boston area, and for distributing that marijuana in the Boston area; that Andrean JAGGON, GORDON's girlfriend, assists him in the operation; and that GORDON, JAGGON, and others engage in various financial transactions to launder the proceeds generated by the sale of that marijuana in Massachusetts and elsewhere. This investigation began when Transportation and Security Administration officials discovered $60,000 in cash in GORDON's carry-on bag at Boston Logan International Airport on August 11, 2011. Atwood Aff. at ¶20. Subsequently, agents learned that GORDON flew to California and Nevada frequently between June 2012 and February 2014, where he obtained large quantities of marijuana that he then shipped to the Boston area. *Id.* at ¶¶29 – 45. GORDON frequently rented vehicles from National Car Rental when on these trips. *Id.* at ¶29.

15. Using global positioning systems on GORDON's rental vehicles pursuant to federal tracking warrants, agents learned that GORDON usually drove to OLEA's residence, located at 1833 Road B in Redwood Valley, California. Atwood Aff. at ¶31. Aerial surveillance of 1833 Road B by the Mendocino County Sheriff's Office in May 2012 and July 2012 revealed marijuana plants being cultivated on OLEA's property. *Id.*

16. GORDON generally remained at 1833 Road B, Redwood Valley, California, for one or two days, and then drove back to San Francisco the mornings of his return flights to Boston. Atwood Aff. at ¶32. While in San Francisco, surveillance agents observed GORDON driving to different U.S. Post Offices and FedEx mail facilities. *Id.* Interviews with employees of these facilities after GORDON's visits revealed that he mailed numerous packages at a time from these facilities to addresses in the Boston area. *Id.* GORDON addressed the packages to non-existent people at real addresses in the Boston area, and similarly utilized real addresses (but false sender names) to identify the sender of the packages. *Id.* Surveillance agents frequently saw JAGGON receive and/or pick up the falsely addressed packages upon arrival at the delivery addresses in the Boston area. *Id.* Searches pursuant to federal warrants of several of those packages revealed that they contained marijuana. *Id.* at ¶33. Specific examples of GORDON's trips to California in February and March 2013, which ultimately led federal agents to discover several packages of marijuana that GORDON mailed to the Boston area, are described in the Atwood Affidavit at ¶¶34 – 45.

17. GORDON has a business named Mike's Auto Sales & Repair, Inc. ("Mike's Auto Sales & Repair"), which was incorporated in the Commonwealth of Massachusetts on November 12, 2010. The Articles of Organization filed with the Massachusetts Secretary of State list

7

GORDON as the president, director, treasurer and secretary. Mike's Auto Sales & Repair, located at 379 Bowdoin Street, Dorchester, Massachusetts, consists of a single-bay garage with one regular employee. When conducting surveillance on Mike's Auto Sales & Repair multiple days per week in 2012 – 2014, agents observed that business activity consisted generally of less than five customers each day who received automotive repairs. Investigators, however, frequently saw numerous individuals arriving and departing.

18. For tax year 2009, GORDON reported $17,358 in business revenue on his federal tax returns. GORDON's subsequent 2010 federal tax returns showed that Mike's Auto Sales & Repair generated a net loss in adjusted gross income totaling $33,300. Atwood Aff. at ¶22. GORDON has not filed federal taxes for years 2011, 2012 and 2013, and, thus, has declared no income for those years. And during an interview in January 2012 regarding the $60,000 in cash seized from him at Boston Logan International Airport, HSI investigators asked GORDON how he had $60,000 in cash when Mike's Auto Sales & Repair operated at a loss. *Id.* GORDON, however, did not provide an explanation and merely stated that he had the money from purchasing high-end vehicles. *Id.*

19. Investigators have examined financial records for a Bank of America account, held in the name of Mike's Auto Sales & Repairs, Inc. ("Mike's Auto Account"), a CitiBank savings account, held in the name of Michael Gordon (the "Gordon Savings Account"), and a CitiBank checking account, held in the name of Michael Gordon (the "Gordon Checking Account"). Such financial documents reveal that from January 2010 to June 2014, GORDON deposited almost $2,000,000 into these three accounts, with the majority of funds moving through Mike's Auto Account. Atwood Aff. at ¶61.

20. Specifically as to Mike's Auto Account, in 2011, 80 deposits into the account totaled $364,297. Of those 80 deposits, 52 consisted of either cash or a mix of cash and checks. The cash from these 52 deposits in 2011 amounted to $286,390. In 2012, 137 deposits into the account totaled $611,359. Of those 137 deposits, 96 consisted of either cash or a mix of cash and checks. The cash from these 96 deposits in 2012 amounted to $463,253. In 2013, 93 deposits into this account totaled $447,449. Of those 93 deposits, 52 consisted of either cash or a mix of cash and checks. The cash from these 52 deposits in 2013 amounted to $230,581. The majority of these cash deposits into Mike's Auto Account consisted of large, rounded amounts often in amounts (individually or cumulatively) just below the CTR reporting threshold. These large influxes of cash into Mike's Auto Account stand in contrast to GORDON's taxes for 2010, in which he declared a net loss of $33,300 from Mike's Auto Sales & Repair. *Id.* at ¶ 22. As noted above, GORDON also has not filed tax returns for any years after 2010 and, thus, has declared no income for those tax years. Moreover, while the activity in Mike's Auto Account reflects some routine, smaller deposits from auto dealerships and insurance companies, the vast majority of deposits consist of cash and money orders.

21. Investigators also have identified two real properties that GORDON purchased in the name of the Glenford Family Trust, LLC (the "Trust"). The Trust was incorporated in the State of Florida on January 19, 2012, and its managers are GORDON and Veneta V. ROWE, whom investigators believe is GORDON's mother. According to its Articles of Incorporation for a Florida Limited Liability Company, the Trust's principal place of business and mailing address is 4231 NW 25th Street, Lauderhill, Florida, which is ROWE's residence.

22. Between January 10, 2011 and April 13, 2012, a total of $195,597 in cash was

9

deposited into the Gordon Checking and Savings Accounts. Specifically, during that time period, $153,597 in cash was deposited into the Gordon Checking Account, and $42,000 in cash was deposited into the Gordon Savings Account. The vast majority of the deposits into the Gordon Checking and Savings Accounts during this time period consisted of large rounded amounts and included over 30 deposits in amounts ranging between $3,000 and $9,000. No single cash deposit into either account exceeded the $10,000 reporting threshold during this timeframe. On April 13, 2012, GORDON purchased a CitiBank bank check in the amount of $110,500 with $100,000 withdrawn from the Gordon Savings Account and $10,500 withdrawn from the Gordon Checking Account.

23. That same day, GORDON purchased a four-unit residential property located at 11561 NW 36th Street, Coral Springs, Florida in the name of the Trust for $370,000. According to closing documents and bank statements, GORDON provided the $110,500 CitiBank bank check to Town & Country Title as the down payment for the real property. Closing documents show two previous payments to Town & Country Title totaling $19,000 from Mike's Auto Account: one personal check in the amount of $8,000 and a wire transfer in the amount of $11,000. The purchase of 11561 NW 36th Street also was funded with a $245,000 loan from Principal Lenders, Inc., a mortgage lender based in Miami, Florida.

24. On June 22, 2012, GORDON purchased a single-family property located at 5665 NW 88th Terrace, Coral Springs, Florida in the name of the Trust for $368,000. According to closing documents and bank statements, down payments on this property consisted of multiple transfers to Town & Country Title from Mike's Auto Account: $10,000 wired on April 20, 2012, $10,000 wired on May 4, 2012, and $128,423 wired on June 22, 2012. The purchase of 5665

NW 88th Terrace also was funded with a $230,000 loan from Principal Lenders, Inc., the same lender who financed the purchase of 11561 NW 36th Street.

25. As described in ¶¶14 – 16 above, investigators have probable cause to believe that from mid-2011 through 2014, GORDON conspired with others to distribute and to possess with the intent to distribute marijuana. Moreover, since January 2010 through June 2014, nearly $2,000,000 in funds was deposited into Mike's Auto, the Gordon Checking and the Gordon Savings Accounts. GORDON's 2010 federal tax returns, however, showed that Mike's Auto Sales & Repair generated a net loss in adjusted gross income, and GORDON failed to file tax returns for any subsequent years. Records for Veneta ROWE's financial accounts also reveal deposits consisting primarily of what appear to be a modest salary from the City of Lakeland, Florida and Social Security disbursements.

26. Based on the above information and as detailed in the Atwood Affidavit, investigators have probable cause to believe that GORDON deposited funds in structured transactions into Mike's Auto, the Gordon Savings and the Gordon Checking Accounts in whole or in part to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of marijuana trafficking in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Moreover, based on the foregoing and as described in the Atwood Affidavit, GORDON's transfers of such funds to purchase residential real estate in, among other locations, Coral Springs, Florida, constituted monetary transactions in criminally derived property of a value greater than $10,000, derived from an SUA, in violation of 18 U.S.C. § 1957(a). Agents further believe that the Glenford Family Trust, LLC is a shell company used to launder GORDON's drug proceeds through real estate. Atwood Aff. at ¶ 69.

27. On October 16, 2014, a federal grand jury sitting in the District of Massachusetts returned a three-count Indictment charging Michael GORDON, Dagoberto OLEA and Andrean JAGGON with Conspiracy to Distribute and to Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846 (Count One), from no later than July 6, 2011 until about October 16, 2014. *United States v. Gordon, et al.*, criminal no. 14-10304-DPW. The Indictment also charged GORDON with Structuring, in violation of 31 U.S.C. § 5324(a)(3) (Counts Two and Three). The Indictment is currently under seal.

## FORFEITABILITY OF THE FUNDS

28. Investigators have identified two bank accounts opened by the Glenford Family Trust, LLC. Both accounts list or listed a mailing address of ROWE's residence at 4231 NW 25th Street, Lauderhill, Florida. The first account, which is closed, was a business checking account opened in Florida at TD Bank, N.A. on April 27, 2012. ROWE was the sole signatory. This account's financial records show deposits of personal checks in large, rounded figures drawn on accounts of individuals related to or associated with GORDON, such as ROWE and JAGGON. Many of these checks were written shortly after cash deposits, which equaled or nearly equaled the amounts of the checks, were made in Boston, Massachusetts. Atwood Aff. at ¶ 72.

29. On July 29, 2013, GORDON opened business checking account number 004630936126 at Bank of America in the name of the Glenford Family Trust (*a.k.a.* the target Glenford Account). GORDON is the sole signatory on this account. From the date of the account's opening through September 2, 2014, 101 deposits into this account totaled approximately $286,013. Of these 101 deposits, approximately 73 deposits consisted of or included cash totaling $195,282. Each of the purely cash deposits into this account amounted to

$10,000 or below. Of the 73 deposits that consisted of or included cash, 21 were made in Massachusetts at the same Bank of America branches in the Boston area at which cash deposits were made into Mike's Auto Account; specifically, the Uphams Corner, Randolph, Roslindale, Lower Mills, and Fields Corner branches. The 21 cash deposits made in Massachusetts into the Glenford Account that amounted to between $3,000 and $10,000 are listed in the following table:

| Date of deposit | Branch location | Amount of cash |
|---|---|---|
| 8/26/2013 | Uphams Corner, MA | $5,000 |
| 9/11/2013 | Uphams Corner, MA | $8,000 |
| 11/22/2013 | Randolph, MA | $3,000 |
| 11/27/2013 | Roslindale, MA | $10,000 |
| 12/2/2013 | Roslindale, MA | $8,000 |
| 12/13/2013 | Uphams Corner, MA | $5,000 |
| 1/16/2014 | Uphams Corner, MA | $4,000 |
| 1/27/2014 | Grove Hall, MA | $10,000 |
| 2/11/2014 | Randolph, MA | $6,000 |
| 3/3/2014 | Lower Mills, MA | $5,000 |
| 3/4/2014 | Uphams Corner, MA | $10,000 |
| 3/7/2014 | Randolph, MA | $3,000 |
| 3/26/2014 | Fields Corner, MA | $5,000 |
| 3/27/2014 | Lower Mills, MA | $5,000 |
| 4/30/2014 | Fields Corner, MA | $5,000 |
| 5/14/2014 | Fields Corner, MA | $5,000 |
| 5/21/2014 | Grove Hall, MA | $5,000 |
| 5/28/2014 | Fields Corner, MA | $5,000 |
| 6/20/2014 | Roslindale, MA | $5,000 |
| 6/25/2014 | Fields Corner, MA | $5,000 |
| 7/10/2014 | South Bay, MA | $6,000 |
|  | **TOTAL =** | **$123,000** |

As described more below, funds on deposit in the Glenford Account were then used to make mortgage payments for the two Florida real properties held in the name of the Glenford Family Trust. Such deposits of cash proceeds into an account held in the name of the Trust, whose listed managers are GORDON and his mother and which investigators believe is a shell company, were most likely designed in whole or in part to conceal or disguise the nature, location, source,

13

ownership, or control of property believed to be the proceeds of specified unlawful activity.

30. Other deposits consist primarily of money orders, cash deposited in Florida, and checks in the amount of $1,300. The table below lists the checks in the amount of $1,300 (and one check in the amount of $1,400) that were deposited into the Glenford Account from July 29, 2013 through September 2, 2014:

| Date of deposit | Amount of check |
| --- | --- |
| 8/9/2013 | $1,300 |
| 9/11/2013 | $1,300 |
| 10/10/2013 | $1,300 |
| 1/21/2014 | $1,400 |
| 2/11/2014 | $1,300 |
| 3/7/2014 | $1,300 |
| 4/11/2014 | $1,300 |
| 5/12/2014 | $1,300 |
| 6/12/2014 | $1,300 |
| 7/11/2014 | $1,300 |
| 8/11/2014 | $1,300 |

Such checks were all drawn on an account held in the name of a payee who, based on public records, resides at 11565 NW 36th Street, Coral Springs, Florida. Based on appraisal records, each unit in 11561 NW 36th Street appears to bear its own street number, and 11565 NW 36th Street is most likely a unit in that real property. The checks in the amount of $1,300, therefore, are most likely payments from a tenant who rents a unit in the multi-family property located at 11561 NW 36th Street, Coral Springs, Florida. Also on August 11, 2014, a Bank of America bank check made payable to Mike's Auto Sales & Repair in the amount of $10,935 was deposited into the Glenford Account. This $10,935 consisted of funds from Mike's Auto Account after Bank of America closed that account on June 25, 2014. And as explained in ¶¶19 – 20 above, investigators have probable cause to believe that GORDON deposited drug proceeds

in structured transactions into Mike's Auto Account.

31. As explained above in ¶¶22 – 23, the down payment for the purchase of the real property located at 11561 NW 36th Street, Coral Springs, Florida most likely constituted, or was derived from, structured and laundered proceeds obtained, directly or indirectly, as a result of violations of 21 U.S.C. §§ 841 and 846. Additionally, the deposits of proceeds into Mike's Auto, the Gordon Checking and the Gordon Savings Accounts and subsequent transfers to purchase real property in the name of a Trust (*i.e.* 11561 NW 36th Street) were most likely designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of property believed to be or derived from the proceeds of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and/or constituted monetary transactions in criminally derived property of a value greater than $10,000, derived from an SUA, in violation of 18 U.S.C. § 1957(a). Any income from the rental of 11561 NW 36th Street, therefore, also constitutes, or is derived from, proceeds obtained, directly or indirectly, as a result of violations of 21 U.S.C. §§ 841 and 846 and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 21 U.S.C. § 853(a), and/or is involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and/or 1957(a), or is traceable to such property, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1). Moreover, the deposits of such rental checks into an account held in the name of the Glenford Family Trust, whose listed managers are GORDON and his mother and which investigators believe is a shell company, are most likely designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of property believed to be or derived from the proceeds of specified unlawful activity.

32. While the down payments for the real properties located at 11561 NW 36th Street and 5665 NW 88th Terrace in Coral Springs, Florida consisted of funds from Mike's Auto, the Gordon Checking and the Gordon Savings Accounts, funds from the Glenford Account are used to make the mortgage payments for those two real properties. From July 29, 2013 through September 2, 2014, approximately $188,168 has been paid to Principal Lenders and applied to the mortgages on the above-referenced properties. Specifically, based on documents from Principal Lenders, 13 monthly mortgage payments of $5,000, totaling $65,000, were made via electronic check from the Glenford Account to Principal Lenders for the 11561 NW 36th Street, Coral Springs loan during this timeframe. Additionally, 11 monthly mortgage payments of $10,000, totaling $110,000, were made via electronic check from the Glenford Account to Principal Lenders for the 5665 NW 88th Terrace, Coral Springs loan during this timeframe. A final mortgage payment of $13,168 was made via electronic check from the Glenford Account to Principal Lenders in July 2014, thereby satisfying that mortgage in full.

## CONCLUSION

33. Based upon the information set forth above and upon my training and experience, I have probable cause to believe that the Funds constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§841 and/or 846 and therefore are subject to seizure and forfeiture pursuant to 21 U.S.C. §§881(a)(6) and 853(a) and 18 U.S.C. §984. I further have probable cause to believe that the Funds are property involved in structured transactions at a

domestic financial institution in violation of 31 U.S.C. §5324, or property traceable thereto, and are therefore subject to seizure and forfeiture to the United States pursuant to 31 U.S.C. §5317(c)(2) and 18 U.S.C. §984. Finally, I have probable cause to believe that the Funds are involved in money laundering in violation of 18 U.S.C. §§1956 and/or 1957, or are property traceable thereto, and therefore are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§981(a)(1)(A) and 982(a)(1).

Eric R. Mackin, Special Agent
Homeland Security Investigations
Department of Homeland Security

Sworn and subscribed to before me this ___th day of November 2014.

Hon. Robert B. Collings
United States Magistrate Judge

17