UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Crim. No. 14-CR-10304-DPW (RBC) |
| ) | |
| MICHAEL GORDON, ) | |
| DAGOBERTO OLEA, and ) | |
| ANDREAN JAGGON, ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO DEFENDANT'S SUPPLEMENTAL SUGGESTED
CONDITIONS OF RELEASE**

Defendant Gordon has filed a Supplemental Suggested Conditions of Release, proposing that he be released on an appearance bond in the amount of $57,000 secured by real property, and an unsecured $100,000 bond secured by his own signature. Gordon also proposes that he submit to electronic monitoring and that his daughter, Michaela Gordon, serve as a third party custodian to him and reside at his residence during pendency of the case. The conditions proposed by Gordon are insufficient to overcome the presumption of detention in this matter, and are insufficient either to protect the community or to secure his presence at these proceedings, and should be rejected by the Court.

On November 14, 2014, the Court held a detention hearing in this matter and heard evidence in the form of sworn testimony from HSI Special Agent Richard Atwood. SA Atwood's sworn Affidavit was also submitted to the Court, as was a report prepared by Pretrial Services, both without defense objection. Those submissions established provided the Court with evidence of the following:

- Gordon has been charged with a serious drug trafficking offense that carries a mandatory minimum prison sentence of ten years and up to life imprisonment;

- Gordon made between $6 million and $12 million from the sale of marijuana during the course of the charged conspiracy;

- Gordon expended vast amounts of cash derived form the sale of marijuana during the conspiracy, including the purchase of his home at 4 Garden Street in Randolph, MA, for $330,000 in cash and the purchase of additional properties in Florida;

- On the date of Gordon's arrest, a search warrant executed at his mother's residence in Florida revealed a safe containing approximately $273,000 in cash; Gordon's mother and Gordon's brother both stated that the safe and the money contained therein belonged to Gordon

- On the same date, approximately $37,000 in cash was found in Gordon's residence at 4 Garden Street, Randolph, MA;

- On the same date, approximately $23,000 was seized from an account held by the Glenford Family Trust, a trust created and controlled by Gordon and his mother;

- During the search of Gordon's residence, an unloaded 9mm handgun and a fully loaded magazine were found in a bag under Gordon's bed; the gun was not locked or secured in any way;

- Gordon is not licensed to possess a firearm by the State of Massachusetts;

- Gordon's passport was not found at his residence or at any of the other locations searched;

- Gordon was born in Jamaica and immigrated to the US as a young man, and he maintains ties with his family in Jamaica;

- Gordon's family informed searching agents that Gordon owns property in Jamaica;

- Documents seized from Gordon's residence revealed that Jaggon (with two other individuals) owns property in Jamaica;

- During his interview with Pretrial Services Gordon refused to answer questions regarding his finances;

- Also during that interview Gordon either did not recall or would not say when he had last traveled outside the US or where he had gone; SA Atwood testified that Gordon traveled to the Turks and Caicos only one year ago (in 2013);

- Gordon also claimed that he did not know the addresses or locations of his family in Florida, including his mother, the amount of money he earned last month, what his business was worth, or what his car was worth.

Since that initial hearing, Pretrial Services has interviewed Gordon's daughter, Michaela Gordon, and additional investigation has been conducted. Those inquiries have revealed the following:

- The defendant's daughter is only 22 years old;

- She is a full-time student with a small child, and she works part-time;

- She informed Pretrial Services that she has never lived outside of Massachusetts, and that she lived at her mother's address until very recently, when she moved in with her sister;

- However, SA Atwood's testimony noted that Gordon was seen engaging in what SA Atwood believed to be drug trafficking activity at Ms. Gordon's mother's address, and trash runs revealed boxes with marijuana residue discarded from the residence;

- According to Ms. Gordon, she was a resident of her mother's house when these activities were observed, indicating that she may have had knowledge of her father's drug trafficking activities;

3

- Although Ms. Gordon claims to have resided at all times in Massachusetts, a search of department of motor vehicles records produced two different State of Florida driver's licences issued to Ms. Gordon;

- A similar search revealed that defendant Gordon also possesses a State of Florida driver's license;

- In November 2013, Gordon addressed at least one package from California (which the government alleges contained marijuana) to Michaela Gordon, and Ms. Gordon contacted FedEx to inquire about the package when it failed to arrive as expected (due to heavy winter storms delaying transportation).

The government submits that these factors, in addition to the other information set forth in the government's submissions and the Pretrial Services report, demonstrated clear and convincing evidence that Gordon is both a flight risk and a danger to the community, and that no condition or combination of conditions can be fashioned to address those risks and adequately ensure the safety of the community or the defendant's presence at these proceedings.

The defense has offered a list of conditions which, apparently, are alleged to be sufficient to secure against the risk of flight and the danger to the community. The proffered conditions are not sufficient and should be rejected by the Court.

With regard to the proffered $57,000 secured bond (which the government only learned of at approximately 5pm last night), the government submits that the value of the bond and the property are insufficient to overcome the risk of flight posed by the defendant. Initially, although the defense identifies one mortgage on the property (with a principal balance of approximately $342,000) and claims that the property has an appraised value of $400,000, resulting in approximately $57,000 in equity, the government's brief investigation has revealed a second mortgage on the property that

reduces or eliminate that equity.  Specifically, the quitclaim deed for the property (a true and correct copy of which is attached hereto as Exhibit A) reveals that the property was purchased by Mr. Gayle in 2006 for $445,000.  At that time, a mortgage in the amount of $356,000 was recorded against the property (a true and correct copy of which is attached hereto as Exhibit B).  That appears to be the mortgage to which the defendant refers.  However, at the same time a second mortgage on the property, in the amount of $89,000, was also recorded (a true and correct copy of which is attached hereto as Exhibit C).  The two mortgages together equaled $445,000 - the purchase price of the property.  There is no record of the second mortgage being paid off or otherwise released.  If that mortgage remains against the property, the balance owing against the property may well be over its appraised value of $400,000, resulting in no equity to secure a bond.

Even assuming that the property does have $57,000 in equity, that amount is still insufficient to overcome the flight risk posed by the defendant.  On the date of the defendant's arrest the government seized over $325,000 in cash from his home, his safe in Florida, and the trust he controlled.  Such vast stockpiles of cash point to the real possibility that he maintains additional stockpiles of cash that the government has not yet located.  Indeed, even the conservative estimate that Gordon earned $6 million from his drug trafficking activities reveals that millions of dollars remain unaccounted for.  This figure may or may not include the properties he apparently has in Jamaica.  If released, Gordon could flee the country and, from a safe location, simply give Mr. Gayle $57,000 from his hidden assets to offset the cost of the forfeited bond.  For the same reason, a $100,000 bond secured only by Gordon's signature is insufficient to overcome his risk of flight.

Electronic monitoring would not offset this risk appreciably.  The monitor would simply send an alarm to the monitoring agency if Gordon removed it or went beyond the prescribed perimeter.  It would take time for the US Marshals (or any other law enforcement agency) to respond to the

alarm, by which time sufficient time can have passed for Gordon to leave the country.  Indeed, the inability of the searching agents to find his passport and his possession of an additional license from Florida (and his daughter's similar possession of Florida drivers licenses) evidences that he may have false identification documents to assist his flight.

Nor would Michaela Gordon serving as custodian alleviate these concerns.  Ms. Gordon is only 22 years old and she is fiercely defense of and devoted to her father.  She has no assets to secure the defendant's compliance.  And she may have known of (and even assisted in) his drug trafficking activity.  In any event, it is unreasonable to except that she would contact Pretrial Services or law enforcement if she learned that her father was violating his bond.  Her possession of Florida licenses that she railed to disclose to Pretrial Services also raises concerns.

Gordon's drug trafficking activities and his unlawful possession of a firearm evidence his willingness to break the law, and his willingness to put those around him and the community at risk.  The vast amounts of cash seized from Gordon pale in comparison to the vast amounts of money the government's financial investigation (which is still ongoing) revealed moved through his accounts.  Literally millions of dollars in drug proceeds are unaccounted for.  Gordon has ample means and a strong incentive to flee, and the proposed bond conditions are insufficient to mitigate that threat.  The proposed bond conditions should be rejected by the Court, and the defendant should be held pending trial without bail as a flight risk and as a danger to the community.

DATED: November 21, 2014	Respectfully submitted,

	CARMEN M. ORTIZ
	United States Attorney

By:	  /s/ *Karen D. Beausey*
	Karen D. Beausey
	Assistant U.S. Attorney

6

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED: November 21, 2014          /s/ *Karen D. Beausey*
                                  Karen D. Beausey
                                  Assistant U.S. Attorney