# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,

     v.                         CRIMINAL NO. 2014-10304-DPW-01

MICHAEL GORDON,
        Defendant.

## *MEMORANDUM AND ORDER OF DETENTION PURSUANT TO 18 U.S.C. § 3142(e)*

COLLINGS, U.S.M.J.

    Michael Gordon ("Gordon" or "the defendant") appeared on November 14, November 17, November 21, December 2 and December 16, 2014 with counsel for a detention hearing. He is charged with conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 846.

    The purpose of a detention hearing is as stated in the statute - i.e., "...to determine whether any condition or combination of conditions...(of release)

will reasonably assure the appearance of [the] person as required and the safety of any other person and the community...". Title 18 U.S.C. § 3142(f). It is important to note that the statute, 18 U.S.C. § 3142(e), contains a presumption which is applicable to the case at bar. The statute provides, in pertinent part:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required *and* the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed - (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46; (B) an offense under section 924©, 956(a), or 2332b of this title...

Emphasis supplied.

The defendant is charged in the Indictment with a violation of the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) which carries a maximum sentence of ten years or more imprisonment. Thus, it is presumed in the instant case that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community if I find that there is probable cause to believe that the defendant committed the offense charged in the Indictment. Although this presumption

2

does not shift the burden of persuasion to the defendant, it does place a burden of production on the defendant, and even if evidence to meet that burden is produced, the presumption does not disappear. The Court is permitted to incorporate into the calculus Congress's judgment that defendants who have probably committed serious drug felonies are dangerous and pose particularly great risks of flight. *United States v. Palmer-Contreras*, 835 F.2d 15, 17-18 (1 Cir., 1987); *United States v. Jessup*, 757 F.2d 378, 380-386 (1 Cir., 1985).

The first issue then is whether there is probable cause to believe that the defendant committed the offense with which he is charged. The return of an indictment is sufficient to fulfill the probable cause prerequisite for the presumption's operation. *United States v. Vargas*, 804 F.2d 157, 163 (1 Cir., 1986). The second issue is whether the defendant has met his burden of production. I find that he has.

The next question is whether the Government has proven by a preponderance of the evidence that there are no conditions or combination of conditions which will reasonably assure the defendant's appearance.[1] For

---

[1] I find that the Government has failed to prove by clear and convincing evidence that there are no conditions of release which will reasonably assure the safety of other persons and the community. The defendant has a minimal criminal record which does not involve violence or the distribution of such drugs as heroin and cocaine which would render him a danger.

reasons which follow, I find that the Government has proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure that the defendant will appear.

The defendant is charged with a serious drug offense; he faces a substantial sentence if convicted, and since the evidence against him is quite strong, it is likely he will be convicted.

The history and characteristics of the defendant are, on balance, not conducive to release. The defendant is forty-two years old. He was born in Jamaica. The Pre-Trial Services Report does not state when he entered the United States but he has been here at least since 1994 when he married his ex-wife in Boston. He became a naturalized United States citizen in 2002. His ex-wife and their three children reside in Mattapan, Massachusetts. He has fathered seven children by five different women. One of those women is the co-defendant Jaggon with whom he has one child, and Ms. Jaggon is currently pregnant expecting his eighth child. Other than the children with his ex-wife and Ms. Jaggon, it is not known where his other children reside. He has lived alone in Randolph, Massachusetts for the past three years; he owns the home in which he lives with no mortgage but the home is subject to forfeiture as a result of the charge in the instant case. His family (mother and brother) owns

property in Jamaica, and aunts, uncles and cousins live there. He owns an auto body shop in Dorchester, and although it appears that some legitimate business occurs there, the evidence is that he has used the business as a place where he can sell marijuana. *See* 14 at p. 16. [2]

He was somewhat evasive when being interviewed by Pre-Trial Services. He told the officer that he had traveled outside the United States in 2013 for a "vacation" but could not remember where he went. He further could not tell the officer where in Florida his parents and brother live. These statements strain credulity. Further, he has a United States Passport but has not offered to surrender it to the Court.[3]

To his credit, his criminal record is minimal, the only conviction being for possession of Class D in 2006 for which he received a one year suspended sentence and two years probation. He appears to have completed the probationary term successfully.

However, other than his evasiveness in the Pre-Trial Services interview and

---

[2] According to testimony at the detention hearing, the tax return for the business for 2010 recorded a $33,000 loss; no tax returns were filed for subsequent years.

[3] Neither the defendant's United States passport not his Jamaican passport was found during the search of the defendant's residence.

the lack of substantial ties to Massachusetts, the main reasons why the defendant poses a serious risk of flight are his roots in a foreign country, the availability of a passport and the huge amount of money he derived from his criminal activity which has not been accounted for which could be used to finance flight.

Basically, what the defendant was doing was obtaining marijuana in northern California and shipping it in Express Mail packages to the Boston, Massachusetts area where he resold it. The details of the operation are set forth in Agent Atwod's Affidavit (#14) at pp. 17-26. At the detention hearing, Agent Atwood testified that his investigation had revealed that the defendant had shipped over 300 packages of marijuana in this manner. Based on packages that agents did seize, and subtracting the weight of the packaging materials, the total amount of marijuana shipped was 2900 pounds. The prevailing price for a pound of marijuana in Boston is $6,000; in northern California, a pound of marijuana costs $2000. This would produce a $4,000 per pound profit for a total of $11,600,000 profit for the entire 2900 pounds. Agent Atwood testified that just reducing the estimates by 50%, the defendant would have made "close to 6 million dollars" in profits less perhaps $1,000,000 as costs of doing business, i.e., flying back and forth to California, renting cars, hotels, etc.

However, investigating agents examining the defendant's financial records (including the records of his business) could only trace $1,000,000 which had not been transferred back to California to purchase more marijuana. Using the lower number, it appears that there is $3,000,000 to $4,000,000 unaccounted for which the defendant could use to finance flight.

The results of a search of the defendant's residence in Randolph, Massachusetts supports not only the nature of the defendant's illegal business but also his access to large amounts of cash. During the search, the agents found $37,000 cash hidden at various locations in the residence as well as twenty pounds of marijuana. Further, a search of a safe in the defendant's mother's house resulted in the seizure of $273,000 in cash; according to the defendant's brother, he purchased the safe for the defendant, and the defendant was the only person who had access to it. It is manifest that the defendant has access to significant funds with which to flee to a place where he could support himself without having to face the charges in the instant indictment.[4]

In finding that the Government has met its burden in this case, I give great weight to the presumption contained in 18 U.S.C. § 3142(e) (referenced *supra*)

---

[4] In these circumstances, the defendant's offer to put up $40,000 in both equity in real estate (not subject to forfeiture) and cash is clearly insufficient reasonably to assure the defendant's appearance.

because, in my judgment, the defendant closely resembles the Congressional paradigm. *Palmer-Contreras*, 835 F.2d at 17-8. As the Court of Appeals wrote in that case:

> ...[T]his presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries. Forfeiture of even a large bond may be just a cost of doing business, and hence drug traffickers pose special flight risks.
>
> \* \* \*
>
> ...[E]ven after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but rather retains some evidentiary weight - the amount depending on how closely

> defendant's case resembles the congressional paradigm...-
> to be considered along with all other relevant factors.

*Palmer-Contreras,* 835 F.2d at 17-8.

The Court of Appeals reaffirmed its holding in *Palmer-Contreras* in the case of *United States v. Dillon*, 938 F.2d 1412, 1415-7 (1 Cir., 1991).

How does the defendant closely resemble the Congressional paradigm?

The defendant has roots in Jamaica; his roots in Massachusetts are not substantial. He has access to one or more passports and significant amounts of money to facilitate flight.

As indicated *supra,* it is highly likely that he will be convicted in this case and will receive a substantial jail sentence. In these circumstances, the incentive to flee is great. I can find no condition or combination of conditions of release which will reasonably assure me that he would appear.

Accordingly, pursuant to 18 U.S.C. § 3142(e), it is ORDERED that the defendant be, and he hereby is, DETAINED pending trial of the charges contained in the above-styled Indictment. Pursuant to 18 U.S.C. § 3142(e), the written findings of fact and a written statement of reasons for the detention are contained *supra*. Further pursuant to 18 U.S.C. § 3142(I), it is ORDERED that:

    (l) The defendant be, and he hereby is, committed to

the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3) On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to an authorized Deputy U. S. Marshal for the purpose of any appearance in connection with a court proceeding.

Review of the within Detention Order may be had by the defendant filing a motion for revocation or amendment of the within Order pursuant to 18 U.S.C. § 3145(b).

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

December 22, 2014.