UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL GORDON, et al.<br><br>Defendants. | No. 14-CR-10304-DPW |

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE SEIZED FROM:  4 GARDEN STREET (Dkt. No. 146); 4231 NW 25TH STREET (Dkt. No. 147); 379 BOWDOIN STREET (Dkt. No. 148); AND 28 FRANCIS DRIVE AND 805 NORTH STREET (Dkt. No. 149)**

CABELL, U.S.M.J.

On August 11, 2011, TSA officials conducting a luggage screening discovered $60,000 concealed in defendant Michael Gordon's carry-on luggage.  Law enforcement officers interviewed Gordon about the money and his travel plans and then seized the money after finding probable cause to believe it was connected to drug trafficking activity.  Gordon was not taken into custody and was allowed to continue on his flight.  Five months later, Gordon and his attorney met with law enforcement officials to discuss the airport incident and other things.  Based in part on the evidence from these two encounters, law enforcement officials subsequently obtained five warrants to search: (1) Gordon's Randolph, MA residence (Dkt. No. 146); (2) Gordon's mother's Lauderhill, FL residence (Dkt. No. 147); (3) Gordon's place of business at 379 Bowdoin Street (Mike's Auto Sales and Repair), Dorchester, MA (Dkt. No. 148); (4), co-defendant Daphne Jean's Francis Drive, Randolph, MA residence (Dkt. No. 149); and (5) Gordon's brother's Randolph, MA storage locker (Dkt. No. 149).

Gordon seeks to suppress all of the evidence seized pursuant to these warrants. He argues that the affidavits[1] supporting the warrants were based in large part on evidence obtained from his interactions with TSA and MSP officials at Logan Airport on August 11, 2011.[2] Gordon contends that the airport evidence was obtained in violation of his Fourth Amendment rights, and that the evidence from these searches is therefore poisonous fruit that must be suppressed. He argues further that there was no probable cause for the warrants to issue because the affidavits failed to establish a link between Gordon's alleged marijuana enterprise and the locations to be searched. For the reasons set forth below, the Court finds that the motions are meritless and should be denied.

**A. The Defendant Does Not Have Standing to Challenge the Searches of his Mother's Residence (Dkt. No. 147), Co-Defendant Jean's Residence, or his Brother's Storage Locker (Dkt. No. 149)**

A defendant has standing to challenge a search on Fourth Amendment grounds where he has both "a subjective expectation of privacy" in the place to be searched, and "society accepts that expectation as objectively reasonable." *United States v. Vilches–Navarrete,* 523 F.3d 1, 13 (1st Cir. 2008) (citing *California v. Greenwood,* 486 U.S. 35, 39 (1998)). A subjective expectation of privacy is manifested where a defendant has "made some minimal effort to protect [his] property or activities from warrantless intrusions." *United States v. Cardona–Sandoval*, 6 F.3d 15, 20–21 (1st Cir. 1993) (collecting cases). In determining the reasonableness of an

---

[1] All four Massachusetts warrant applications rely on the lengthy, November 5, 2014 Affidavit of Special Agent Richard Atwood. (Dkt. No. 14). The factual assertions contained in his affidavit are not disputed for purposes of the present motions and are incorporated here by reference. In general, the affidavit summarizes Gordon's 2011 and 2012 encounters with law enforcement agents, his bicoastal marijuana operation, the participation of the co-defendants, and the relevance of the locations to be searched. The application for the warrant to search Ms. Rowe's home in Lauderhill, Florida rests on the affidavit of Special Agent Van Lindsey but his assertions are based on and repeat Agent Atwood's assertions.

[2] Gordon moved separately to suppress evidence obtained from his interactions with TSA and MSP officials at Logan Airport on August 11, 2011. (Dkt. No. 144). This Court has reasoned that none of the evidence obtained there violated any of the defendant's protectable interests, and that there is no basis to suppress any of the evidence.

2

expectation of privacy, courts in this Circuit "consider ownership, possession, control, ability to exclude from the premises, or a legitimate presence on the premises." *Id.* at 21.

The government contends that the defendant has no standing to challenge three of the searches here, including his mother's Lauderhill, FL residence, co-defendant Daphne Jean's Randolph, MA residence, or his brother's storage locker, because he does not allege any facts establishing either a subjective or reasonable expectation of privacy in these locations or in any of the evidence seized. In that regard, the defendant avers by affidavit that he "was a guest" at some in his mother's home, was a "frequent guest" at co-defendant Jean's residence, and "frequently used" his brother's storage locker.

The Court agrees that these vague assertions are insufficient to show the defendant had a reasonable expectation of privacy in either residence or the locker. With respect to his mother's and Jean's residences, the defendant clearly did not own or lease them. The defendant claims to have been a guest in both places but there is no suggestion or claim he was a guest at either place at the time of the search, or that he had permission to stay at either place whenever he wished, or that he ever controlled any portion of the premises. He thus has no standing to challenge the search of either residence. *See United States v. Aguirre,* 839 F.2d 854 (1st Cir. 1988) (defendant lacked standing to challenge search of apartment even though he had keys to it in his possession where there was no evidence that he owned, leased or resided in the apartment). The same considerations undermine the defendant's claim with respect to his brother's storage locker. Beyond asserting that he "frequently used" the locker, the defendant fails to show or assert any facts to show that he had control over the locker, that he had ongoing permission to use the locker, or that he had ability to exclude others from using it. As such, the defendant's motions challenging these three motions should summarily be denied for lack of standing.

### B. The Affidavits Supporting the Search Warrants Did Not Rely on Unconstitutionally Seized Evidence

Issues of standing aside, Gordon concedes that the various motions to suppress are derivative of the airport search and lose much (if not all) of their force if there is no basis to suppress that evidence. The Court has in fact concluded that none of the evidence from the airport was obtained in violation of Gordon's constitutional rights, and for that reason has recommended denial of Gordon's motion to suppress that evidence. (Court's Report and Recommendation on Defendant's Motion to Suppress, Dkt. No. 226). Assuming for the moment that the Court reached the right result, the government was entitled to rely upon the airport evidence in seeking the warrants at issue here.

Even assuming *arguendo* that the airport evidence was obtained improperly, Gordon provided much of the same evidence when he and his attorney voluntarily met with law enforcement officers five months later. To be sure, Gordon contends the evidence from this meeting should be viewed as fruit of the poisonous tree under *Wong Sun* but that argument has no merit here because the meeting was well attenuated from the events at the airport and constituted a separate, distinct event. *Wong Sun v. United States*, 371 U.S. 417, 488 (1963). The Supreme Court has identified three factors for courts to consider in determining whether the causal chain is sufficiently attenuated: (1) the time elapsed between the constitutional violation and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603 (1975).

None of these factors militates in Gordon's favor here. First, five months elapsed between the Logan incident and the meeting. The First Circuit and other courts have found dramatically smaller periods of time to constitute attenuation. *See United States v. Stark,* 499 F.3d 72, 76 (1st Cir. 2007) (two days); *see also United States v. Conrad,* 673 F.3d 728, 733 (7th

Cir. 2012) (two hours); *United States v. Gross,* 624 F.3d 309, 318 (6th Cir. 2010) (two months); *United States v. Barnum,* 564 F.3d 964, 972 (8th Cir. 2009) (15 minutes); *United States v. Martin,* 434 F.3d 846, 849-50 (5th Cir. 2005) (three months).

Second, Gordon in that interim period obtained counsel and he attended the meeting with and on the advice of his counsel, all in an effort to convince the government that he was a legitimate businessman. In that light, Gordon affirmatively voluntarily made statements and produced documentary evidence as much for his own benefit as anything else. Gordon's act of obtaining counsel and meeting with the agents to further his own interests surely constitutes an intervening circumstance supporting attenuation and admissibility of the evidence.

Finally, there was nothing flagrant or wildly improper about the conduct of the TSA or MSP. Gordon concedes that TSA personnel were entitled to search his luggage, and there was nothing improper or excessive about their decision to contact the MSP. Similarly, even assuming the MSP officers improperly seized Gordon, they were polite, brief and at all times acted based on the reasonable belief that Gordon was involved in drug trafficking.

In short, the search warrant affidavits here did not rely upon improperly seized evidence.

### C. There Was Probable Cause For the Warrants to Issue

Gordon argues that there was no probable cause for the warrants to issue because the affidavits failed to establish a "nexus" between Gordon's alleged criminal activity and the locations to be searched. A court that reviews a magistrate judge's issuance of a warrant "simply [ensures] that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The court reviews questions of law *de novo*, *United States v. Woodbury*, 511 F.3d 93, 96 (1st Cir. 2007), and findings of fact for clear error. *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005); *United States v. McMullin*, 568 F.3d 1,

5 (1st Cir. 2009). The reviewing court must "give due weight to the inferences drawn from [the facts presented by the affiant] by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). A finding of probable cause will be reversed only if there was "no 'substantial basis' for concluding that probable cause existed." *Ribeiro,* 397 F.3d at 48. In a close case, doubts are resolved in favor of upholding a warrant. *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984); *see also United States v. Drake*, 673 F.2d 15, 19 (1st Cir. 1982).

Probable cause to search means "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. It is "a practical, nontechnical conception" based on "common-sense conclusions about human behavior." *Id.*; *see also United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012). The task of a judicial officer authorizing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence will be found in a particular place." *Gates*, 462 U.S. at 238.

When evaluating the nexus between alleged criminal conduct and the location to be searched, a magistrate looks to the totality of the circumstances set forth in the affidavit and makes a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Ribeiro*, 397 F.3d at 49 (quoting *Gates*, 462 U.S. at 238); *see also United States v. Feliz*, 182 F.3d 82, 87 (1st Cir. 1999). Direct evidence is not required to establish a nexus; rather, a nexus "can be inferred from the type of crime, the nature of the items sought . . . , and normal inferences as to where a criminal would hide [evidence of a crime]."

*Ribeiro*, 397 F.3d at 49 (quoting *United States v. Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979)); *United States v. Santiago*, 389 F. Supp. 2d 124, 127 (D. Mass. 2005). This type of inference has led the First Circuit and other circuits to find probable cause to search a defendant's home even when there was no direct evidence linking the residence to the underlying criminal activity. *Id*. at 88; *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

In reaching his or her decision, a magistrate may rely on the experience of law enforcement officers to draw the conclusion that evidence of a crime is likely to be found in a particular location. *Feliz*, 182 F.3d at 87; *Grimaldi v. United States*, 606 F.2d 332, 337 (1st Cir. 1979); *United States v. Khounsavanh*, 113 F.3d 279, 284 (1st Cir. 1997) ("whether a law-enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise," was a factor that could contribute to probable cause determination).

### a. Gordon's Residence, Business and Storage Locker

Applying these principles here, the Court finds that there was a substantial basis for the issuing magistrates to conclude that there was probable cause to believe that evidence related to Gordon's alleged criminal activities would be found in his house, his business and his brother's storage locker (to which he had access). SA Atwood noted in his Affidavit that drug traffickers often keep records related to their drug business in secure locations to which they have access. He also noted that traffickers often attempt to disguise and legitimize their drug proceeds through money laundering activities, and that evidence of such activities is likely to be found in secure locations such as Gordon's house, his business, and the storage locker. Even putting aside SA Atwood's testimony, the nature of Gordon's crimes strongly indicated that evidence relating to his criminal activities would be found at a secure location such as his residence, his business, or

the storage locker. The issuing magistrate properly relied on SA Atwood's training and experience, combined with common sense, to determine that there was a fair probability that Gordon would keep evidence relating to his drug trafficking and money laundering activities in the secure locations for which SA Atwood sought warrants.

### b. *Jean's Residence*

The Court finds that there was a substantial basis to find probable cause to believe that evidence related to the alleged marijuana trafficking conspiracy would be found at defendant Jean's residence.  SA Atwood's Affidavit dedicated an entire section to evidence of Jean's involvement in the marijuana trafficking conspiracy, including details relating to her lease of the residence and her receipt there (and elsewhere) of several parcels of marijuana mailed to her by Gordon.  (Affidavit of Richard Atwood, ¶¶ 46-56).  The Court discerns no error in the determination that these facts established probable cause to believe Jean was involved with Gordon (and others) in a conspiracy to distribute marijuana, and that evidence of her involvement in the conspiracy would be found at her residence.

### c. *Residence of Gordon's Mother, Ms. Rowe*

Finally, there was a sound basis to determine that there was probable cause to believe that evidence of Ms. Rowe's participation in the transfer and use of laundered drug proceeds would be found at her residence.  SA Lindsey detailed evidence that Gordon was utilizing the Cammila Family Trust and the Glenford Family Trust to launder drug proceeds by purchasing real estate in Florida and Massachusetts, and that Ms. Rowe was assisting him. Ms. Rowe and Gordon were the organizational officers of the Glenford Family Trust, and the Trust's principal place of business and mailing address was her address on 25th Street in Lauderhill, FL, 33313.

The Court rejects the argument (made without reference to supporting authority) that the warrant authorizing the search of Ms. Rowe's house was overbroad, and did not authorize the search of the safe inside the home.  A warrant to search a residence for particular types of evidence authorizes the search of containers found within that residence that could reasonably hold the types of evidence sought.  *United States v. Rogers*, 521 F.3d 5, 9-10 (1st Cir. 2009).  Here, the types of items sought in the search – real estate records, financial records, cash, address books, travel documents, photographs, storage unit records, cellular telephones, and computer media – were the sorts of items individuals might conceal in a safe.

### D.  Conclusion

Based upon the foregoing, it is respectfully recommended that the defendant's motion to suppress evidence seized from 4 Garden Street (Dkt. No. 146) be DENIED.  It is further recommended that the defendant's motion to suppress evidence from 4231 NW 25th Street (Dkt. No. 147) be DENIED.  It is further recommended that the defendant's motion to suppress evidence from 379 Bowdoin Street (Dkt. No. 148) be DENIED.  Finally, it is recommended that the defendant's motion to suppress evidence from 28 Francis Drive and 805 North Street (Dkt. No. 149) be DENIED.

The parties are hereby advised that under the provisions of Federal Rule of Criminal Procedure 59(b) any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 59(b) will preclude further appellate

review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Donald L. Cabell
        DONALD L. CABELL, U.S.M.J.

DATED: August 30, 2016